IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **HARTFORD LIFE AND ANNUITY INSURANCE COMPANY,**<br><br>Plaintiff,<br><br>v.<br><br>**ANNE FARRIS, HONGJIAO HU, and NATALIA NEBEL,**<br><br>Defendants. | Case No. 12 C 1320<br><br>Hon. Harry D. Leinenweber |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Cross-Motions for Summary Judgment. For the reasons stated herein, Defendant Natalia Nebel's Motion for Summary Judgment [ECF No. 49] is granted and Defendant Hongjiao Hu's Motion for Summary Judgment [ECF No. 55] is denied.

## I. BACKGROUND

This interpleader case seeks to determine the proper beneficiary of a life insurance policy. The material facts are not in dispute – the parties agree on the background and many of the specifics, and all of the facts in Defendant Nebel's Rule 56.1 Statement of Facts are deemed admitted because Defendant Hu did not respond to the numbered paragraphs in Nebel's Statement. *See,* Local Rule 56.1(b)(3)(C).

Thomas Walkowiak ("Walkowiak"), the insured, married Defendant Natalia Nebel ("Nebel") in May 1989. In 1996, Walkowiak bought a

life insurance policy (the "Policy") from Hartford Life and Annuity Insurance Company and designated Nebel as the primary beneficiary. He financed the purchase with marital funds from a joint checking account he shared with Nebel.  Thereafter, Nebel paid the premiums using funds from the joint account.  After she and Walkowiak separated in early 2008, Nebel continued to pay the premiums from the joint account.  Although Walkowiak stopped depositing money into the joint account later that year, Nebel continued to transfer money from her personal account into the joint account so that she could keep paying the premiums.

Even though he and Nebel were separated, Walkowiak relied on Nebel for financial help.  Nebel lent Walkowiak thousands of dollars so that Walkowiak could purchase expensive prescription medications and meet other obligations.  On one occasion in 2011, Walkowiak removed a significant amount of money (probably several thousand dollars, but the record does not specify) from the joint account without Nebel's permission.  But despite the breakdown of the marriage and apparent transgressions of any remaining trust, Walkowiak told Nebel on multiple occasions that she remained the Policy's beneficiary.  In a May 2010 e-mail to Nebel, Walkowiak affirmed "I will always try my hardest to help and support you until I die, and then you will get the life insurance."  Contrary to this and similar assurances, Walkowiak removed Nebel as the Policy's primary beneficiary and replaced her with Defendants

Hongjiao Hu ("Hu") (his business partner and paramour) and Anne Farris (his sister) ("Farris") in September 2011, without notifying Nebel.

Nebel filed for divorce in December 2011. While attempting to finalize the dissolution, Walkowiak represented to Nebel and her attorney that Nebel would remain the beneficiary of the Policy. Walkowiak even listed the Policy as a marital asset to be distributed in the divorce. But the divorce was never finalized, as Walkowiak committed suicide on December 30, 2011. Expecting that she would receive the life insurance proceeds, Nebel organized and financed Walkowiak's cremation, memorial service, reception following the service, and obituary. On her own dime, she traveled to Massachusetts to dispose of the ashes in the manner Walkowiak had requested.

When Nebel attempted to obtain the insurance proceeds, she was surprised to learn that she was no longer a beneficiary under the Policy. She contested payment of the Policy's proceeds to Hu and Farris, and Hartford initiated this interpleader action. Nebel and Hu have filed cross motions for summary judgment.

## II. JURISDICTION

Defendant Farris is a citizen of Florida, and Defendant Nebel is a citizen of Illinois. Because there are at least two claimants with diverse citizenships and the amount in controversy exceeds

$500.00, the Court has jurisdiction over this interpleader case pursuant to 28 U.S.C. § 1335.

### III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Court construes all facts and draws all reasonable inferences in favor of the non-moving party. *Ricci v. DeStefano,* 557 U.S. 557, 586 (2009).

### IV. ANALYSIS

Nebel contends that she acquired a vested interest in the Policy's proceeds by paying the Policy premiums. Because Nebel is a vested beneficiary, she argues, Walkowiak could not remove her as a beneficiary without her consent.

"A beneficiary's right to the proceeds of a life insurance policy normally does not vest until the insured dies." *Perkins v. Stuemke,* 585 N.E.2d 1125, 1127 (Ill. App. Ct. 1992). However, Illinois law recognizes that someone other than a named beneficiary can acquire equitable rights in an insurance policy. *Columbian Circle v. Mudra,* 132 N.E. 213, 214 (Ill. 1921) (explaining that an agreement between the insured and the person paying the premiums that the latter will receive a beneficial interest in insurance proceeds can "deprive[] [the insured] of the right to change the beneficiary without [the other's] consent").

A plaintiff can prove her equitable interest in the proceeds of a life insurance policy by establishing the four elements of promissory estoppel: (1) an unambiguous promise; (2) reliance on such promise by the promisee; (3) the promisor expects and foresees such reliance; and (4) the promisee relies on the promise to his injury. *Cullen Distributing, Inc. v. Petty,* 517 N.E.2d 733, 737 (Ill. App. Ct. 1987). Given the "'paramount' right of property owners while they are alive to dispose of their belongings (including the proceeds of life insurance policies) as they see fit," Illinois law requires that each element be established by clear and convincing evidence. *Davis v. Combes,* 294 F.3d 931, 936-37 (7th Cir. 2002).

Nebel swears by affidavit that she paid the policy's premiums using non-marital funds after the separation and that Walkowiak assured her on multiple occasions that she would remain the policy's beneficiary. In a May 2010 e-mail, for example, Walkowiak wrote to Nebel "I will always try my hardest to help and support you until I die, and then you will get the life insurance." ECF No. 53, Ex. B. Hu does not suggest any foul play with the e-mail but asks the Court to "carefully scrutinize[]" it because e-mails "can be easily modified." ECF No. 56 at 7. The Court recognizes that Walkowiak "is dead and thus cannot counter the surviving party's version of the relevant events." *Davis,* 294 F.3d at 937. Nonetheless, the e-mail contains sufficient guarantees of

trustworthiness because it is consistent with the rest of the evidence submitted in this case, including Nebel's affidavit and copies of checks used to pay the Policy's premiums. In addition, Nebel's affidavit mentions that Walkowiak offered similar assurances on other occasions. This evidence demonstrates clearly and convincingly that Walkowiak promised unambiguously that Nebel would remain the Policy's beneficiary. *First Nat. Bank of Cicero v. Sylvester,* 554 N.E.2d 1063, 1070 (Ill. App. Ct. 1990) (promise need not be express and "may be inferred from conduct and words"). And because the assurances constitute verbal acts, they are not hearsay.

As to the remaining elements, Nebel showcased her reliance on Walkowiak's promises when she continued to pay the Policy's premiums using her own money even after she and Walkowiak had separated and Walkowiak had lost his job. Nebel also spent thousands of dollars on Walkowiak's funeral and related expenses. This reliance was foreseeable, as well: Walkowiak lacked the funds to pay the Policy premiums, and it is common knowledge that an insurance policy will lapse if the premiums go unpaid. Walkowiak's assurances that Nebel would receive the Policy proceeds would have been meaningless if he did not expect Nebel to pay the premiums. Finally, Nebel suffered financial injury by paying the premiums and the funeral expenses. Therefore, the record provides clear and

convincing evidence that all four elements of promissory estoppel are satisfied.

Because Nebel's rights as the Policy's beneficiary vested, Walkowiak could not remove her as a beneficiary without her consent, which she did not give. Therefore, the Court imposes a constructive trust on the Policy's proceeds in her favor. Because the Court resolves the Motions on this issue, it need not address other grounds raised in the Motions.

## V. CONCLUSION

For the reasons stated herein, the Motion for Summary Judgment as to [ECF No. 49] Defendant Natalia Nebel is granted. The Policy proceeds shall be paid to Defendant Natalia Nebel. Defendant Hongjiao Hu's Motion for Summary Judgment [ECF No. 55] is denied.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　　United States District Court

Date:6/19/2014